IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Richard V. Young | : | |
|   4304 Arabella Court | : | |
|     Upper Marlboro, MD 20772 | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | **Jury Trial Demanded** |
| Sonny Perdue, Secretary, United States | : | |
| Department of Agriculture | : | |
|   1400 Independence Avenue, SW | : | |
|   Washington, DC 20250 | : | |

## <u>COMPLAINT</u>

Plaintiff, Richard V. Young, brings this Complaint against his employer, Sonny Perdue,

Secretary of the United States Department of Agriculture for discrimination in violation of Title

VII of the Civil Rights Act of 1964, as amended.

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of the instant complaint

Pursuant to 28 U.S.C. § 1331 because the Plaintiff brings an action arising under the laws of the

United States.

2.     Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28

U.S.C. §1391 because the unlawful employment practices were committed and the employment

records were maintained, in whole or in part, in this District.

## II.     PARTIES

3.     At all times material, Plaintiff, Richard Young ("Young") was a citizen of the state

of Maryland and employed by the United States Department of Agriculture's Foreign

1

Agricultural Service ("FAS") as the Chief Information Officer (GS-15).

4.      At all times material, Defendant, Sonny Perdue, Secretary of the United States

Department of Agriculture, was an executive agency, with a subagency known as the Foreign

Agricultural Service, which employed Plaintiff as its Chief Information Officer.

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff sought counseling on February 24, 2017.  He filed a formal complaint of

discrimination and harassment based on his race (African American), sexual orientation

(heterosexual), and gender (male) and retaliation on June 2, 2017 and within fifteen (15) days of

notice to file a formal complaint.  Because more than 180 days had passed since the filing of his

formal complaint without disposition of the same, on or about June 28, 2019, Plaintiff notified

the Equal Employment Opportunity Commission of his intent to file a complaint in the United

States District Court pursuant to 29 C.F.R. §1614.407(b).

## IV.   FACTS

6.      Young began his employment with the United States Department of Agriculture

("USDA") Foreign Agricultural Service ("FAS") as its Chief Information Officer ("CIO") in

January of 2015.  Young's salary grade was GS-15.

7.      Soon after beginning his employment with FAS, Young learned that other Agency

CIO's were compensated at the Senior Executive Service level.  Other CIO's so compensated

where white.

8.      When Young initially began as the CIO, Bryce Quick ("Quick"), a homosexual,

white male, was his immediate or first line supervisor.  Quick was FAS' Chief Operating Officer

or COO.  Quick reported directly to the FAS Administrator at the time, Phil Karsting

("Karting").  Karsting was Young's second-line supervisor.  Other CIO's reported directly to

their Agency Administrator and all CIO's had a dotted-line reporting structure to the USDA CIO.

9.      Quick hired other subordinate managers who are white, homosexual and at least

one of whom Quick had previously engaged in a romantic relationship.

10.     In the early months of his employment, Young observed that more than 90% of

FAS Information Technology ("IT") contracting dollars were being subsumed by a single

contractor - Ace Information Technology, Inc. ("Ace Info").  Young also observed that

deliverables and action items under the Ace Info contract were not being met or satisfied and that

its Project Manager, Ann Knapp ("Knapp"), lacked the credentials, skills and experience to

perform as Project Manager or support on the Ace Info contract.  Young had been informed early

in his tenure that Quick had a conflict of interest because of his close personal relationship with

Knapp, but observed that Quick was very much involved in the administration of the Ace Info

contract.

11.     Young also observed that much of the staff in the FAS IT department, most of

whom had been hired or brought in at the direction of Quick and then deputy CIO, Brenda

Lawson, were not qualified for their positions.  Ms. Lawson was the only certified Contracting

Officer's Representative in the IT department and similarly lacked the skills, credentials and

experience to perform in her role as Deputy CIO.

12.     Young reported his observations to  Administrator Karsting, as well as Quick.

Young was surprised when Quick insisted that Young continue to work with Ace Info and Ann

Knapp.  He later discovered, however, that Quick enjoyed a close personal relationship with

Knapp.  Her office was located in proximity to Quick's; they traveled to and from work together;

Knapp ran personal errands for Quick; and ultimately, Young discovered pictures and FaceBook posts where Quick indicated that he had helped his "friend" Ann Knapp purchase a yacht. Young also discovered additional pictures of Quick, Knapp, and another FAS contractor, John Oh, on a yacht together.

13.     In 2015, Young began a process to facilitate Ace Info's repayment of approximately $300,000 for improperly billing the contract for services that had not been performed.  He reported the issue to the Contracting Officer responsible for the Ace Info contract, against Quick's instructions, in order to begin a claim process to recoup the funds. Young had hoped that the Contracting Officer would help recoup funds for other areas of improper billing, but that was not to be.

14.     At the close of his first year as CIO, Young reported what he believed to be inappropriate contact between Quick and Knapp and irregularities in the spending of IT contract dollars to Karsting, only to be asked to tone down or re-craft the nature of his written communication.  Young also began taking steps to descope the Ace Info contract and asked that Ace Info send a more qualified or appropriate Project Manager to service the contract.

15.     When Young  asked that Knapp be removed as Project Manager and that Ace Info provide a more qualified candidate, Ron Croushorn ("Croushorn"), assistant to Quick and later Young's first level supervisor, warned Young of the "blow-back" he would face from Quick as a result of taking action against Knapp and Ace Info.

16.     Concerned that he could be made responsible for improper and irresponsible spending of contract dollars, and suspicious that Quick was accepting kickbacks and gratuities from Ace Info, Young began to work with the contracting office to obtain qualified contractors

who were capable of providing the IT services needed.  Young ran into several roadblocks.

17.     Young discovered that a contractor, American Governmental Services, run by Joseph Steady ("Steady"), also enjoyed a close relationship with Quick.  In fact, Steady routinely performed inherently governmental services, to include complete management of the IT budget. Young learned that Steady provided incorrect spending and budget figures to the Administrator, at the instruction of Quick, in order to obfuscate IT spending.  In fact, Steady was the only individual who had access to the IT budget for FAS and refused to allow Young, who was the CIO and responsible for FAS IT spending, to access the budget numbers.  Young complained of this conduct to Quick and the Department CIO, as he was not aware of other CIOs (white) who were denied access to their budgets and spending trends.

18.     Young also discovered that some of the IT contracts, and in particular, American Government Services (Steady's contract), were managed outside of FAS and USDA.  A contracting officer with the Department of Interior managed the American Governmental Services contract.

19.     Although Quick, Steady and the Department of Interior contracting officer took steps to thwart Young's attempts to award contracts to qualified and diverse IT service providers and to descope the American Governmental Services (Steady) and Ace Info contracts, Young, with the help of the contracting office, was able to bring on a number of qualified contractors by the close of 2016.  At that point, less than 10% of contracting dollars were being subsumed by Ace Info or Steady.

20.     Young also tried to hire qualified staff to support the IT mission, but was constantly thwarted in doing so by Quick and the deputy CIO, Brenda Lawson ("Lawson").

Young observed other white managers under Quick's and the Administrator's supervision, as well as other white CIOs hire as needed or required.  He complained about his inability to hire and his observations to the Administrator, Quick and Croushorn.

23.    In late 2016, Young reported what he'd learned about IT spending and improper relationships between Quick, Steady, and Ace Info to the Office of Inspector General ("OIG").  He learned that other employees had also made reports about Quick and what they perceived to be his acceptance of kickbacks or gratuities from Ace Info.  In fact, employees continue to lodge complaints against Quick, Lawson and other FAS officials concerning IT contracts and spending.  Young learned of an OIG complaint filed in June of 2019.

22.    The "blow-back" that Croushorn warned of began in late 2016.  In addition to thwarting Young's efforts to hire competent staff, Croshourn and Quick began denying travel, training and advancement opportunities to Young.  They began micromanaging his work and blocking Young's attempts to ensure efficient operations.  They began a gossip campaign against Young, falsely stating that he awarded contracts to individuals with whom he had close personal relationships.  Young complained directly to Quick and Croushorn, verbally and in writing, concerning his belief that both were subjecting him to harassment and retaliation because of his actions.

23.    Young sought EEO counseling because he believed he had not observed Croushorn or Quick deny other employees (female, white or homosexual) under their supervision training and travel.  He did not observe his managers micromanaging other subordinates outside of his protected class in a similar manner.  Other white, female or homosexual managers were permitted to hire staff as needed and fulfill the dictates of their duties

and responsibilities unencumbered.

24.     On March 3, 2017, within a week or so of seeking counseling, and after the EEO

Director, Adriano Vasquez, informed Quick and Croushorn of Young's complaint, Young

received notice from Croushorn that he was being placed on administrative leave because his

clearance had been "withdrawn."  USDA has a published regulation, DM 4600-2, which details

the process to revoke or suspend a clearance, to include a subject employee's administrative

rights, but does not contemplate the "withdrawal" of a clearance.

25.     Because Young did not understand the "withdrawal" of his clearance, Young,

through retained counsel, immediately inquired as to why FAS placed him on administrative

leave and "withdrew" his clearance.  Young also inquired about his administrative rights.  Mr.

Croushorn did not respond to Young's inquiry, instead referring him to a member of the security

staff, who did not respond to the inquiry.  Both Croushorn and Quick claimed to have no

involvement in Young's placement on administrative leave.

26.     Believing his placement on administrative leave, to be in part, connected to his

OIG complaint and informal disclosures to the Administrator, Quick and Croushorn concerning

Quick's likely acceptance of kickbacks from Ace Info and improper conduct, Young filed a

formal disclosure with the Office of Special Counsel ("OSC") in May of 2017.

27.     In approximately late May or early June of 2017, FAS contacted Young

concerning its ostensible investigation of alleged employee misconduct by Young and requested

an interview.  During the interview, Young learned of the pretextual nature of the allegations

against him, and that many of the allegations had been raised by Steady, just after Young made

an OIG complaint against him.  Young participated in the interview and submitted a written

statement.

28.     After the conclusion of the ostensible misconduct investigation, FAS proposed

Young's removal in the fall of 2017.  The proposed removal was a pretext to terminate his

employment in order to remove him as an impediment to Quick's relationship with Ace Info and

Steady.  In fact, Young learned that within days of his placement on administrative leave,

Lawson announced to the staff that Young was gone, was not returning, and scheduled a party,

which Quick attended.  Quick and Lawson brought Steady back as a consultant and subsequently

awarded a contract to Ace Info, acting as a joint venturer with another company.[1]

29.     Believing that at least some of the reasons cited in the notice of proposed removal

were pretextual, OSC negotiated a stay of the removal.  OSC referred Young's (and another FAS

employee) disclosures to the OIG for further investigation and believed no action should be taken

on the proposed removal pending the outcome of OIG's investigation of Quick.

30.     Special Agents from OIG interviewed Young.  During this process, he learned that

Quick had been the subject of a criminal investigation for some time and that his disclosures

were not alone.  Upon information and belief, Quick had been alleged to have engaged in similar

improper and unethical conduct even before coming to FAS as its COO.

31.     In the fall of 2018, FAS proposed to indefinitely suspend Young because his

clearance had been withdrawn (in March of 2017).  Young challenged the proposed suspension

because FAS had not followed its internal regulations (DM 4600-2) and afforded Young due

process in the "withdrawal" of his clearance.  Shortly after Young submitted his reply

---

[1] Upon information and belief, Steady and the American Governmental Services contract were not renewed in 2019. FAS, through OIG or other sources, discovered Steady had been double billing FAS and a non-USDA agency. Steady purported to provide services to FAS from his home in New Jersey several days a week and billed USDA for those services.  Upon information and belief, Steady was working for another agency and billing for services to that Agency on the days he purported to be providing services to FAS from his home.

challenging the proposed suspension in this regard, FAS notified Young of its intent to revoke his

clearance because of an ostensible failure to report a judgment and a few of the pretextual reasons

cited in the stayed notice of proposed removal.   FAS then afforded Young the administrative

rights enumerated in DM 4600-2.  Young is presently challenging the revocation of his clearance

because he had in fact been interviewed concerning the judgment in 2015 and because the

additional reasons supporting the revocation of his clearance are patently pretexutal.  While the

administrative process was pending, the FAS Administrator indefinitely suspended Young

(March 2019).

     32.     Although Quick is under criminal investigation by the Office of Inspector

General, he has not been similarly proposed for removal or suspended by any FAS Administrator

or other official.  Instead, while the IG agents contacted and interviewed FAS employees, FAS

temporarily assigned Quick as the attache' to Rome, Italy.  Following his return, and upon

information and belief, Quick has been placed on detail.  Upon information and belief FAS has

not instituted any action to withdraw, deny, revoke or suspend Quick's clearance, despite the

accusation that he has received millions of dollars in kickbacks from a FAS contractor.

     33.     Upon information and belief, a number of FAS managers, most of whom are

white men, have been subjected to investigations and allegations concerning improper conduct

and have not been similarly suspended, placed on administrative leave or had their clearances

revoked.  In fact, several subject to investigation had been found to have acted as alleged.  Those

individuals were not proposed for removal, suspended, and did not have their clearances

revoked.  Several, like Quick, were moved to positions of lesser visibility and/or allowed to

continue working until they became eligible to retire.

## V.      CLAIMS

### A.      Discrimination in violation of Title VII

34.      Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-three as if fully set forth herein, and further state as follows:

35.      Plaintiff was not treated as favorably as similarly situated employees outside of his protected classes (African American, male and heterosexual) by his supervisors Croushorn, Quick and the FAS administrator in the terms and conditions of his employment as well as in terms of disciplinary, proposed disciplinary and security related administrative actions taken against him, which have adversely impacted his compensation, reputation and future employment prospects.

36.      As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses, emotional suffering and anguish, embarrassment and humiliation, and other damages.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make him whole in addition to reimbursement of reasonable attorney fees and costs.

### B.      Retaliation in violation of Title VII

37.      Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-three as if fully set forth herein, and further state as follows:

38.      Plaintiff engaged in protected activity by complaining of discrimination and harassment to his supervisors, Croushorn, Quick and the Administrator, as well as by filing EEO complaints.  Plaintiff's supervisors knew of his complaints and engaged in conduct which would dissuade a reasonable employee from complaining, to include placing Plaintiff on administrative

leave and suspending him without pay.

39.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff

suffered and will continue to suffer irreparable harm, pecuniary losses, emotional suffering and

anguish, embarrassment and humiliation, and other damages.  Plaintiff is entitled to declaratory

relief, injunctive relief, and compensatory damages to make him whole in addition to

reimbursement of reasonable attorney fees and costs.

     **C.**        **Harassment in violation of Title VII**

40.     Plaintiff restates and realleges the allegations of paragraphs one (1) through

thirty-three as if fully set forth herein, and further state as follows:

41.     The Administrator, Quick, and Croushorn subjected Plaintiff to harassment

because of his race, gender and sexual orientation and retaliatory harassment because of

Plaintiff's complaints.  The harassment was severe and/or pervasive and negatively impacted

Plaintiff's ability to perform his position.  As a result, Plaintiff has suffered embarrassment,

humiliation, fear, and adverse consequences.

42.     As a direct and proximate result of Defendant's harassment, Plaintiff

suffered and will continue to suffer irreparable harm, pecuniary losses, emotional suffering and

anguish, embarrassment and humiliation, and other damages.  Plaintiff is entitled to declaratory

relief, injunctive relief, and compensatory damages to make him whole in addition to

reimbursement of reasonable attorney fees and costs.

**VI.**     **PRAYER FOR RELIEF**

     Plaintiff seeks the following relief:

     (a)       a declaratory judgment determining that Defendant discriminated and retaliated

against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended;

(b)     an order enjoining Defendant from further discrimination and retaliation against Plaintiff;

(c)     reinstatement to his position of FAS CIO with an appropriate award of back pay and or back pay with an appropriate award of front pay if reinstatement is not feasible;

(d)     compensatory damages to compensate Plaintiff for pain, emotional suffering, humiliation, embarrassment, and out of pocket expenses;

(e)     an award of reasonable attorney's fees, case expenses and costs; and

(f)     all additional relief as may be required by justice.

**Plaintiff Demands a Trial by Jury**


Respectfully submitted:                                              July 19, 2019


_____
Eden Brown Gaines #489862
Brown Gaines, LLC
10 G Street, NE, Suite 600
Washington, DC 20002
Main (202) 248-5040
Fax (301) 542-0032
egaines@browngaines.com