UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| RICHARD YOUNG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-2144 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13 |
| | : | | |
| SONNY PERDUE, *Secretary, United States Department of Agriculture*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I. INTRODUCTION

This case involves Plaintiff's claims of discrimination, brought pursuant to Title VII of the Civil Rights Act of 1964, against his employer, the United States Department of Agriculture's ("USDA") Foreign Agriculture Service ("FAS"). The Complaint describes a number of potential adverse employment actions, including a personnel misconduct investigation, Compl. ¶ 27, ECF No. 1, withdrawal of Plaintiff's interim security clearance, *id.* ¶ 24, placement on administrative leave, *id.*, and indefinite suspension, *id.* ¶ 31. Defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c) and argues that Plaintiff's claims are barred by *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), which broadly prohibits courts from deciding claims that require evaluating the merits of a security clearance determination. *See* Def.'s Mot. J. Pleadings, ECF No. 13; Def.'s Mem. Supp. J. Pleadings ("Def.'s Mem."), ECF No. 13-1. Because the Court concludes that, at this early stage, it cannot yet determine whether Plaintiff's claims require evaluating the merits of a security clearance determination, and for the reasons set forth below, Defendant's motion is denied.

## II.  FACTUAL BACKGROUND

Plaintiff, an African-American male, started working as the Chief Information Officer ("CIO") for USDA's FAS in January 2015.  Compl. ¶ 6.  Plaintiff's first line supervisor was Bryce Quick, the Chief Operating Officer, who in turn reported to Phil Karsting, the FAS Administrator.  *Id.* ¶ 8.  Shortly after starting as CIO, Plaintiff became concerned about certain relationships between contractors, Mr. Quick, and other FAS employees; he believed that Mr. Quick may have been accepting kickbacks and gratuities from preferred contractors.  *Id.* ¶¶ 10–20.  Plaintiff reported these concerns to the Office of Inspector General ("OIG") in late 2016.  *Id.* ¶ 21.

Plaintiff alleges that in response to his report to the OIG, Mr. Quick and his assistant began denying travel and training opportunities, started micromanaging his work, and "began a gossip campaign against [Plaintiff], falsely stating that he awarded contracts to individuals with whom he had close personal relationships."  *Id.* ¶ 22.  Plaintiff sought EEO counseling because he believed he was not being treated the same as other employees not part of his protected class.  *Id.* ¶ 23.

About a week after seeking EEO counseling, on March 2, 2017, FAS alerted the Office of Homeland Security and Emergency Coordination that it had an active personnel misconduct investigation regarding Plaintiff.  Pl.'s Opp'n Mot. J. Pleadings ("Pl.'s Opp'n") Ex. 3, ECF No. 15-4.[1]  The memorandum describing the investigation explains that the allegations against

---

[1] The Court may rely on the memorandum describing the personnel misconduct investigation as incorporated by reference in the Complaint and subject to judicial notice as part of the administrative record in this case.  *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 43 n.19 (D.D.C. 2019) (citing *Kambala v. Checchi & Co. Consulting, Inc.*, 280 F. Supp. 3d 131, 137 (D.D.C. 2017) and *Mpoy v. Rhee*, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014)).  For the same reason, the Court also may rely on: the "Withdrawal of Temporary Security Clearance," Def.'s Mem. Ex. A at 68, ECF No. 13-2; the "Notice of Administrative Leave," *id.* at 63; the "Notice of

Plaintiff related to conflicts of interest in awarding contracts, unauthorized use of system credentials, inappropriate charging of hours against contractors, and failure to report a civil judgment.  *Id.*  The memorandum also notes that Plaintiff "currently holds an Interim Secret clearance that was granted by USDA on 2/10/2016."  *Id.*

At nearly the same time, Plaintiff received notice that his interim security clearance had been withdrawn pending additional information "regarding the alleged conflict of interest, misuse of Government Information System, financial consideration, and personal conduct."  Def.'s Mem. Ex. 1 at 68, ECF No. 13-2.  On March 3, 2017, Plaintiff was placed on administrative leave because his "interim Secret Security clearance was suspended on March 2, 2017."  *Id.* at 63.  Plaintiff filed a formal disclosure with the Office of Special Counsel ("OSC") in May 2017 because he believed that his placement on administrative leave stemmed from his complaint to the OIG.  Compl. ¶ 26.  In late May or early June 2017, Plaintiff was interviewed by someone from FAS about the personnel misconduct investigation and "learned of the pretextual nature of the allegations against him, and that many of the allegations had been raised by [a contractor], just after [Plaintiff] made an OIG complaint against him."  *Id.* ¶ 27.  On October 5, 2017, Plaintiff received a "Notice of Proposed Removal" that detailed the findings of the misconduct investigation, noted the withdrawal of his security clearance, and recommended termination.  *See* Def.'s Mem. Ex. B at 1–15.  However, Plaintiff was not terminated; the OSC stayed Plaintiff's removal "pending the outcome of OIG's investigation of Quick."  Compl. ¶ 29.

On February 19, 2019, Plaintiff received a "Notice of Decision for Indefinite Suspension" that noted the withdrawal of his security clearance and stated that his "position requires that [he]

---

Proposed Removal," Def.'s Mem. Ex. B, ECF No. 13-3; and the "Notice of Decision for Indefinite Suspension," Def.'s Mem. Ex. C, ECF No. 13-4.

obtain and maintain access to classified information as a condition of continued employment." Def.'s Mem. Ex. C at 1. Plaintiff is currently challenging the decision to revoke his security clearance through a separate administrative appeal. Compl. ¶ 31.[2]

### III. LEGAL STANDARD

Defendant's motion asks for judgment on the pleadings pursuant to Rule 12(c), which allows a party to seek judgment "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) "asks the court to render 'a judgment on the merits . . . by looking at the substance of the pleadings and any judicially noted facts.'" *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (quoting *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016) (internal quotation marks and citation omitted)). As with a motion under Rule 12(b), "[t]he court construes the complaint in the light most favorable to the non-moving party and accepts as true all factual inferences drawn from well-pleaded factual allegations." *Kambala v. Checchi & Co. Consulting, Inc.*, 280 F. Supp. 3d 131, 136 (D.D.C. 2017). Unlike a motion under Rule 12(b), in a motion under Rule 12(c) the "movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings" and that "no material fact is in dispute." *Murphy*, 326 F.R.D. at 49; *see also Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016). As noted by the court in *Murphy*, "the Rule 12(c) burden is substantial." 326 F.R.D. at 49.

---

[2] Plaintiff claims that the initial decision to withdraw his interim security clearance, issued in March 2017, was improper because he was not given the right to challenge the decision under the applicable regulation. Compl. ¶ 31. Sometime in the fall of 2018, Plaintiff alleges that FAS notified him of its intent to revoke his clearance and afforded him the appropriate administrative remedies, which he is currently using to appeal the decision. *Id.*

## IV.  ANALYSIS

The parties agree that *Egan* prohibits the Court from evaluating the merits of a security clearance determination.  The issue before the Court is whether *Egan* and its progeny preclude review of all, or any, of Plaintiff's claims.  Accordingly, the Court begins by reviewing *Egan* and the D.C. Circuit decisions interpreting and applying its holding.

In *Egan*, the Supreme Court considered whether the Merit Systems Protection Board, an independent agency charged with adjudicating conflicts between federal workers and their employing agencies, had the authority to "review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action."  484 U.S. at 520.  The Court described the decision of whether or not to grant a security clearance as "an attempt to predict [an individual's] possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, [the individual] might compromise sensitive information."  *Id.* at 528.  The Court found that "the protection of classified information must be committed to the broad discretion of the agency responsible" and that "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence."  *Id.* at 529.  The Court stated that the ordinary administrative law presumption in favor of appellate review "runs aground when it encounters concerns of national security . . . where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."  *Id.* at 526–27.[3]

---

[3] The Court noted the matters that the Merit Systems Protection Board *does* have jurisdiction to review.  When an employee is removed for cause after a required security clearance is denied, the Merits Systems Protection Board "may determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible."  *Id.* at 530.

The D.C. Circuit extended this reasoning in *Ryan v. Reno*, where the court held "that under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII." 168 F.3d 520, 524 (D.C. Cir. 1999). The court reasoned that it could not apply the required *McDonnell Douglas* burden shift analysis because the plaintiff "could not challenge the proffered reason's authenticity without also challenging its validity." *Id.* at 523–24 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). After a plaintiff establishes a *prima facie* case of discrimination, *McDonnell Douglas* shifts the burden to the employer to articulate a nondiscriminatory reason for the adverse employment action. *Id.* If the nondiscriminatory reason articulated is the revocation or denial of a security clearance, a court cannot evaluate the proffered reason "without running smack up against *Egan*." *Id.* at 524.

In *Rattigan v. Holder*, the D.C. Circuit carved out space for some Title VII claims to survive *Egan*. 689 F.3d 764 (D.C. Cir. 2012). The court stated

> [W]e do not believe that *Egan* insulates from Title VII *all* decisions that might bear on an employee's eligibility to access classified information. Rather, the Court in *Egan* emphasized that the decision to grant or deny security clearance requires "[p]redictive judgment" that "must be made by those with the necessary expertise in protecting classified information."

*Rattigan*, 689 F.3d at 767 (D.C. Cir. 2012) (quoting *Egan*, 484 U.S. at 529). The court held "that *Egan's* bar on judicial review extends only to security clearance-related decisions made by the Security Division itself and not to decisions by other [employees] to report their concerns to the Division." *Id.* The court made clear, though, that a "Title VII claim may proceed only if [the plaintiff] can show that agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false." *Id.* at 771. Thus, Title VII claims alleging that employees outside the Security Division made knowingly false referrals about a plaintiff to the Security Division survive *Egan*. The court explained that this carve out is

6

necessary because if "all reporting-based claims [are] nonjusticiable, federal employees could no longer seek redress for the harm caused when a coworker fabricates security concerns in retaliation for statutorily protected activity, and Congress's purpose in enacting Title VII would be frustrated." *Id.*

Here, the parties disagree about whether the allegations raised in the Complaint require evaluation of a security clearance decision. According to Defendant, "all of the adverse employment actions that Plaintiff identifies as grounds for his allegations of discrimination, retaliation, and harassment flow directly from the revocation of Plaintiff's security clearance." Def.'s Mem. at 9. Plaintiff claims he does not seek review of the decision to withdraw his security clearance. Pl.'s Opp'n at 1, ECF No. 15. Instead, he argues his Title VII claims stem from Defendant's refusal to allow Plaintiff to maintain his position with restrictions on his access to secure information, the refusal to transfer Plaintiff to a nonsensitive position, and the failure to follow internal regulations concerning the withdrawal of his clearance. *Id.* at 1–2. Plaintiff also argues that *Egan* does not bar review of his claims that predate the withdrawal of his clearance, *id.* at 7, and his claims related to the personnel misconduct investigation, which he states do not relate to his security clearance at all, *id.* at 7–8. Plaintiff also points to disputed issues of fact that include whether his position actually required access to classified information, whether Defendant followed internal regulations for withdrawal of his clearance, and whether there was a factual basis for the personnel misconduct investigation. *Id.* at 2–3.

The Court cannot determine at this stage—based only on the pleadings and information of which the Court takes judicial notice—whether adjudicating Plaintiff's claims will necessarily require evaluation of the security clearance decision. Indeed, it appears evidence could exist showing a knowingly false referral to the Security Division. Plaintiff's report to the OIG about

Mr. Quick, the alleged gossip campaign, and the personnel misconduct investigation all predate, but correspond closely in time with, the withdrawal of Plaintiff's security clearance.  *See* Compl. ¶¶ 21–24.  The letter notifying Plaintiff of the withdrawal of his interim security clearance actually references the same subject matter as the misconduct investigation.  *See* Def.'s Mem. Ex. A at 68 (noting withdrawal of clearance "pending additional information regarding the alleged conflict of interest, misuse of Government Information System, financial consideration, and personal conduct.").  Through discovery, it is conceivable that Plaintiff could show that other employees made knowingly false statements about him to the Security Division, which would preserve his claim.  *See Rattigan*, 689 F.3d at 773 ("[G]iven that the record contains some evidence that could form the basis for a claim of knowingly false security reports, we shall remand for the district court, *after permitting any necessary discovery*, to determine . . . whether" the claim can survive.) (emphasis added); *see also Ames v. Johnson*, 121 F. Supp. 3d 126, 133 (D.D.C. 2015) ("With the benefit of discovery, and on a motion for summary judgment, the facts may crystalize and enable the court to reevaluate [] whether *Egan* precludes judicial review of Plaintiff's claim.").[4]

Furthermore, that Court agrees that many issues raised by Plaintiff appear to have little to do with the substance of the security clearance decision.  For example, Plaintiff's Complaint broadly alleges that similarly situated employees outside his protected class have received more favorable treatment "in terms of disciplinary, proposed disciplinary and security related administrative actions."  Compl. ¶ 35.  In his opposition brief, Plaintiff builds on this, stating that

---

[4] The court in *Johnson* noted that, while "an open question in our Circuit, the Third Circuit has held that *Egan* does not necessarily preclude review of a discrimination claim based on mixed-motive theory."  121 F. Supp. 3d at 133 n.5 (citing *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008).  Whether such a claim could be developed in this case remains to be seen.

white or non-African-American employees in managerial positions have had their security clearances revoked and have not been placed on administrative leave or suspended.[5] Pl.'s Opp'n at 4. Evaluation of this claim does not require evaluating the merits of a security clearance decision. Likewise, the claims revolving around the personnel misconduct investigation, which FAS initiated prior to withdrawal of the security clearance, do not require delving into the substance of the security clearance decision.[6] *See* Pl.'s Opp'n Ex. 3, ECF No. 15-4 (disclosing personnel misconduct investigation to Security Division and noting Plaintiff "currently holds an Interim Secret clearance."). Plaintiff also claims that FAS failed to follow internal regulations after the initial withdrawal of his security clearance that would have allowed him an opportunity to challenge the decision. Compl. ¶ 31. Deciding whether the regulations were followed does not require the Court to analyze the substance of the security clearance decision.[7]

---

[5] Defendant states "Plaintiff seeks information supporting his theory that Caucasian employees were placed into positions after security clearances were withdrawn or revoked, thereby multiplying the *Egan* problem while Plaintiff attempts to establish sufficient similarity." Def.'s Reply at 4, ECF No. 20. The Court does not follow this argument. Plaintiff could establish similarity by demonstrating that a non-African-American employee was in a managerial position and had her security clearance withdrawn or revoked; evaluating what happened to that employee subsequent to the revocation (e.g., transfer to a nonsensitive position or modification of job duties) does not require review of the underlying security clearance decision. Such a decision to keep an employee after her security clearance has been revoked is not a "security clearance-related decision[] made by the Security Division itself." *Rattigan*, 689 F.3d at 767.

[6] Defendant argues that to the extent Plaintiff's claims might survive *Egan*, they are not properly pled. *See* Def.'s Reply at 4–6. The Court disagrees. Defendant does not acknowledge that the personnel misconduct investigation began prior to the withdrawal of the security clearance and focuses instead on Plaintiff's claims alleging a hostile work environment. *Id.* But even on those grounds, given the facts pled and construing the Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to support the claims that predate the withdrawal of the security clearance.

[7] Plaintiff points to decisions from the Federal Circuit that read *Egan* as allowing a court to review "whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in [the applicable statute] were followed." Pl.'s Opp'n at 9 n.2 (quoting *Romero v. Dep't of Defense*, 527 F.3d

All that being said, if after discovery Plaintiff fails to establish a case beyond challenging the security clearance decision, or fails to show that any employees made knowingly false referrals to the Security Division about him, or that similarly situated employees not of his protected class who also lost security clearances were treated more favorably than he was, the Court will not hesitate to enter judgment for Defendant pursuant to *Egan*. Claims asking the Court to review the substance of the security clearance decision or suggesting that the withdrawal of clearance was pretextual will not be entertained. However, at this early stage, the Court will not foreclose relief to a potentially meritorious claim without seeing the whole picture. *See Rattigan*, 689 F.3d at 772–73; *Johnson*, 121 F. Supp. 3d at 133; *Greenhouse v. Geren*, No. 07-cv-182, 2009 WL 10692664, at *3 (D.D.C. July 27, 2009) ("Although defendants may ultimately prevail in their argument that *Egan* and *Ryan* bar plaintiff's claim . . . the Court concludes that dismissal would be inappropriate without an opportunity for some discovery.").

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 24, 2020                              RUDOLPH CONTRERAS
                                                  United States District Judge

---

1324, 1328 (Fed. Cir. 2008)). While not binding precedent in this Circuit, the Court appreciates that these issues would not require an analysis of the substance of the security clearance decision.